IRV M. GROSS (State Bar No. 53659)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Ste. 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Telecopier: (310) 229-1244
Email: img@lnbrb.com

Attorneys for Plaintiff
David L. Ray, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:08-bk-11614-SB |
| FAITH COMMUNICATIONS, INC., dba VOCE, | Chapter 7 |
| Debtor. | |
| _____ | |
| DAVID L. RAY, CHAPTER 7 TRUSTEE | Adv. No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT FOR:** |
| | (1)   **AVOIDANCE OF PREFERENTIAL TRANSFERS;** |
| SUMITOMO MITSUI BANKING CORPORATION, SUMITOMO MITSUI BANK, AMERICA'S DIVISION, MASATO NAKANISHI, FAITH, INC., BRIAN RICHARDS, JENNIFER RICHARD, SUNCAL MIDWEST LLC, SOLARIS ACQUISITION, INC., ANTHONY ROSELLI, | (2)   **AVOIDANCE OF FRAUDULENT TRANSFERS** |
| | (3)   **RECOVERY OF AVOIDED TRANSFERS;** |
| | (4)   **BREACH OF FIDUCIARY DUTY** |
| | (5)   **FRAUD** |
| | (6)   **TURNOVER OF PROPERTY OF THE ESTATE** |
| Defendants. | |
| | Date: [TO BE SET BY SUMMONS] |
| | Time: |
| | Place:   Courtroom 1575 |
| |           Roybal Federal Bldg. |
| |           255 E. Temple Street |
| |           Los Angeles, CA 90012 |

**TO THE HONORABLE SAMUEL L. BUFFORD, UNITED STATES BANKRUPTCY JUDGE:**

David L. Ray, the duly appointed and acting Chapter 7 trustee in the above referenced case ("Trustee"), alleges as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and 11 U.S.C. §§ 547 and 550.

2.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b).

3.      Venue is proper in this Court under 28 U.S.C. § 1409 as this adversary proceeding arises under and in connection with a case under Title 11 which is pending in this district.

<u>**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**</u>

4.      This bankruptcy case was commenced by the filing of an involuntary petition against Faith Communications, Inc., dba Voce, a Delaware corporation (the "Debtor") on February 7, 2008 (the "Petition Date").

5.      On February 14, 2008, an order was entered granting an emergency motion for the appointment of an interim trustee filed by the petitioning creditors.  On February 15, 2008, the Trustee was appointed.

6.      An Order for Relief was entered on April 4, 2008.

7.      Trustee is informed and believes and thereupon alleges that defendants Sumitomo Mitsui Banking Corporation and Sumitomo Mitusi Banking Corporation, America's Division (collectively, "SMBC") are affiliated entities in the financial services industry, and may have one or more headquarters, at least one of which is in Japan.

8.      Trustee is informed and believes and thereupon alleges that defendant Masato Nakanishi ("Nakanishi") is an individual who at all times material hereto owned 87% of the issued and outstanding shares of the Debtor, was its Chief Executive Officer, President and sole Director, and exercised complete control over the Debtor.  At this time, Nakanishi's exact whereabouts is unknown to the Trustee.

9.    Trustee is informed and believes and thereupon alleges that defendant Faith, Inc. ("FI") is a public entity headquartered in Japan and in some way affiliated with the Debtor.

10.    Trustee is informed and believes and thereupon alleges that defendant SunCal Midwest LLC ("SunCal") was, at various times material hereto, headquartered in the State of Illinois.  Trustee is further informed and believes and thereupon alleges that at all times material hereto SunCal was owned and controlled by defendants Brian Richards ("Brian"), who held himself out as SunCal's Chief Executive Officer, his wife, Jennifer Richards ("Jennifer"), and Anthony Roselli ("Roselli").

11.    Trustee is informed and believes and thereupon alleges that Brian, Jennifer and Roselli are alter egos of SunCal; that is, there exists a unity of ownership and interest between each of them and SunCal such that it would be unjust to permit them, or any of them, to hide behind a claim that they are separate from SunCal, and a fraud and injustice would result if they and SunCal are permitted to maintain the fiction of their purported separate entity status.

12.    Trustee is informed and believes and thereupon alleges that defendant Solaris Acquistion, Inc. ("Solaris") is a Nevada corporation with its principal place of business in the State of Illinois, and at all times material hereto was owned and operated by Jennifer and Brian, who held themselves out, respectively, as its President and its Secretary and Treasurer.

13.    Trustee is informed and believes and thereupon alleges that Brian and Jennifer are alter egos of Solaris; that is, there exists a unity of ownership and interest between each of them and Solaris such that it would be unjust to permit them, or either of them, to hide behind a claim that they are separate from Solaris, and a fraud and injustice would result if they and Solaris are permitted to maintain the fiction of their purported separate entity status.

14.    Debtor operated a consumer wireless service under the brand name "Voce".

15.    Trustee is informed and believes and thereupon alleges that in or around January, 2008, at a time when the Debtor suffered substantial operating losses and was insolvent, Nakanishi entered into an agreement to sell all of his shares in the Debtor to SunCal.  True and correct copies of the Letter of Intent, various resolutions of Debtor's Board of Directors (consisting solely of Nakanishi), and related documents are marked collectively as Exhibit "1"

3

and are attached hereto and incorporated herein by reference.

16.    Trustee is informed and believes and thereupon alleges that although Debtor's cash book balance as of January 9, 2008 was $1, 289,198.00, and it had over $2 Million in assets, SunCal paid no cash for the purchase of the majority and controlling stock of the Debtor.

17.    Trustee is informed and believes and thereupon alleges that on or about January 11, 2008, approximately $477, 513.00 belonging to the Debtor was wire transferred to SMBC (the "SMBC Transfer") in payment of a loan obligation of the Debtor to SMBC despite the fact that the payment was not due until June or July, 2008.

18.    Trustee is informed and believes and thereupon alleges that on or about January 11, 2008, approximately $411, 685.00 belonging to the Debtor was wire transferred to or on behalf of Nakanishi (the "Nakanishi Transfer") purportedly in repayment of loans he allegedly had made to the Debtor.

19.    Trustee is informed and believes and thereupon alleges that Brian caused at least the following transfers to be made from the Debtor's bank account at Silicon Valley Bank to a new account in the name of "Faith Communications" or to an account in the name of SunCal, both accounts located at New Century Bank in Chicago, Illinois (the "New Century Transfers"):

| DATE OF PAYMENT | AMOUNT OF PAYMENT |
|---|---|
| 1/14/08 | $320,000 |
| 1/15/08 | $118,000 |
| 1/22/08 | $440,000 |
| 1/28/08 | $69,500 |
| 1/29/08 | $165,000 |
| 1/29/08 | $96,000 |
| 1/30/08 | $82,000 |
| 1/31/08 | $65,000 |

20.    Trustee is informed and believes and thereupon alleges that on February 1, 2008, Brian caused a wire transfer in the amount of $250,000 to be made from the Debtor's account at Silicon Valley Bank to the account of Solaris at Bank of America in New York (the "Solaris Transfer").

4

21.     Trustee is informed and believes and therefore alleges that on February 4, 2008, Brian caused a wire transfer in the amount of $250,000 to be wired from the Solaris account to the SunCal account at New Century Bank.  Trustee is further informed and believes and thereupon alleges that Solaris was not a creditor of the Debtor and had no prior relationship with the Debtor.

22.     Trustee is informed and believes and thereupon alleges that between January 15-31, 2008, $742,000 was transferred from the Faith Communications account at New Century Bank to the SunCal account at New Century Bank.

23.     Trustee is informed and believes and thereupon alleges that within one year prior to the Petition Date, Debtor owned inventory, furniture and equipment (the "Personal Property") with a total value of in excess of $200,000.  Trustee is further informed and believes and thereupon alleges that Brian, Jennifer and Roselli removed the Personal Property, or caused it to be removed, from the Debtor's offices to storage facilities, and may have removed some or all of the Personal Property from storage to locations unknown to the Trustee, and that the Personal Property, which is property of the estate, is being held and controlled by and/or for the benefit of Brian, Jennifer and Roselli, and each of them.

## **FIRST CLAIM FOR RELIEF**

### **[To Avoid Preferential Transfer—11 U.S.C.§ 547]**

### **(Against SMBC)**

24.     Trustee realleges and incorporates herein by reference the allegations set forth above in paragraphs 1 through 22 as though fully set forth herein.

25.     The SMBC Transfer constituted a transfer of an interest of the Debtor in property.

26.     The SMBC Transfer was made to SMBC for its benefit.  SMBC was a creditor of the Debtor at the time the SMBC Transfer was made.

27.     The SMBC Transfer was made for or on account of an antecedent debt owed by the Debtor to SMBC.

28.    The SMBC Transfer was made at a time when the Debtor was insolvent.

29.    The SMBC Transfer was made within ninety days of the Petition Date.

30.    The SMBC Transfer enabled SMBC to receive more than it would have received if (i) the case was a case under chapter 7 of Title 11; (ii)the SMBC Transfer had not been made; and (iii) SMBC received payment of the debt to the extent provided under Title 11 of the United States Code.

### SECOND CLAIM FOR RELIEF

### [To Avoid Preferential Transfer—11 U.S.C. § 547]

### (Against Nakanishi)

31.    Trustee realleges and incorporates herein by reference the allegations set forth above in paragraphs 1 through 29, as though fully set forth herein.

32.    The Nakanishi Transfer was a transfer of an interest of the Debtor in property.

33.    The Nakanishi Transfer was made to Nakanishi for his benefit.  The Trustee is informed and believes and thereupon alleges that Nakanishi was a creditor of the Debtor at the time of the Nakanishi Transfer.

34.    The Trustee is informed and believes and thereupon alleges that the Nakanishi Transfer was made for or on account of an antecedent debt owed by the Debtor to Nakanishi.

35.    The Nakanishi Transfer was made at a time when the Debtor was insolvent.

36.    The Nakanishi Transfer was made within ninety days of the Petition Date.

37.    The Nakanishi Transfer enabled Nakanishi to receive more than he would have received if: (i) the case was a case under chapter 7 of Title 11; (ii) the Nakanishi Transfer had not been made; and (iii) Nakanishi received payment of the debt to the extent provided under Title 11 of the United States Code.

### THIRD CLAIM FOR RELIEF

### [To Avoid Preferential Transfer—11 U.S.C.§ 547]

### (Against FI)

38.    Trustee realleges and incorporates herein by reference the allegations set forth above in paragraphs 1 through 36 as though fully set forth herein.

39.     Trustee is informed and believes and thereupon alleges that FI guaranteed the loan from SMBC to the Debtor and, therefore, was a creditor of the Debtor at the time of the SMBC Transfer, and that such transfer was made for FI's benefit and on account of the antecedent debt owed by the Debtor to FI.

40.     Trustee is further informed and believes and thereupon alleges that the SMBC Transfer enabled FI to receive more than it would have received if (i) the case was a case under chapter 7 of Title 11; (ii) the SMBC Transfer had not been made; and (iii) FI received payment of the debt to the extent provided under Title 11 of the United States Code.

**FOURTH CLAIM FOR RELIEF**

**[To Avoid Fraudulent Transfer—11 U.S.C. § 548]**

**(Against Nakanishi)**

41.     Trustee realleges and incorporates herein by reference the allegations set forth above in paragraphs 1 through 22, as though fully set forth herein.

42.     Trustee is informed and believes and thereupon alleges that Nakanishi and/or Brian caused the Debtor to make the Nakanishi Transfer with the actual intent to hinder, delay or defraud an entity to which the Debtor was, or became, indebted on or after the date of the Nakanishi Transfer.  Furthermore, the Debtor was insolvent on the date of the Nakanishi Transfer, or was made insolvent as a result of the Nakanishi Transfer, and (i) received less than a reasonably equivalent value in exchange for the Nakanishi Transfer, (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining after the Nakanishi Transfer was an unreasonably small capital, (iii) after the Nakanishi Transfer, the Debtor intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

**FIFTH CLAIM FOR RELIEF**

**[To Avoid Fraudulent Transfer —11 U.S.C. §548]**

**(Against Solaris)**

43.     Trustee realleges and incorporates herein by reference the allegations set forth above in paragraphs 1 through 22, as though fully set forth herein.

1    44.    Trustee is informed and believes and thereupon alleges that the Solaris Transfer

2    was made with the actual intent to hinder, delay or defraud an entity to which the Debtor was, or

3    became, indebted on or after the date of the Solaris Transfer.  Furthermore, the Debtor was

4    insolvent on the date of the Solaris Transfer, or was made insolvent as a result of the Solaris

5    Transfer, and (i) received less than a reasonably equivalent value in exchange for the Solaris

6    Transfer, (ii) was engaged in business or a transaction, or was about to engage in business or a

7    transaction, for which any property remaining after the Solaris Transfer was an unreasonably

8    small capital, (iii) after the Solaris Transfer, the Debtor intended to incur, or believed it would

9    incur, debts that would be beyond its ability to pay as such debts matured.

10    **SIXTH CLAIM FOR RELIEF**

11    **[To Avoid Fraudulent Transfers —11 U.S.C. § 548)**

12    **(Against SunCal)**

13    45.    Trustee realleges and incorporates herein by reference the allegations set forth

14    above in paragraphs 1 through 22, as though fully set forth herein.

15    46.    Trustee is informed and believes and thereupon alleges that the New Century

16    Transfers were made with the actual intent to hinder, delay or defraud an entity to which the

17    Debtor was, or became, indebted on or after the date of the New Century Transfers.

18    Furthermore, the Debtor was insolvent on the date of the New Century Transfers, or was made

19    insolvent as a result of the New Century Transfers, and (i) received less than a reasonably

20    equivalent value in exchange for the New Century Transfers, (ii) was engaged in business or a

21    transaction, or was about to engage in business or a transaction, for which any property

22    remaining after the New Century Transfers was an unreasonably small capital, (iii) after the

23    New Century Transfers, the Debtor intended to incur, or believed it would incur, debts that

24    would be beyond its ability to pay as such debts matured.

25    **SEVENTH CLAIM FOR RELIEF**

26    **[Negligent Breach of Fiduciary Duty]**

27    **(Against Nakanishi)**

28    47.    Trustee realleges and incorporates herein by reference the allegations set forth in

8

paragraphs 1 through 22, as though fully set forth herein.

48.    As the Chief Executive Officer and Director of the insolvent Debtor, Nakanishi owed the Debtor and the creditors of the Debtor fiduciary duties of care and good faith.  These fiduciary duties include, but are not limited to, the duty to know the affairs of the corporation, the duty to conduct due diligence in connection with those who intend to take control of the corporation in order to prevent such persons from improperly disposing of the corporation's assets, to not take advantage of the corporation by self-dealing or other conduct that has the effect of damaging the corporation, and to not dispose of the corporation's assets without fair consideration.

49.    Nakanishi breached his fiduciary duties to the Debtor and its creditors by, among other things, failing to conduct due diligence to determine whether SunCal, and the persons controlling SunCal, had the ability and intent to properly manage the business of the Debtor, giving due consideration to maximizing the value of its assets, and preserving those assets for the benefit of its creditors; by failing to obtain for the Debtor reasonably equivalent value in exchange for the assets being turned over to SunCal; by taking undue advantage of the Debtor and its creditors by allowing the Debtor's cash to be siphoned off by SunCal, as well as using such cash to pay the Debtor's indebtedness to himself ahead of other creditors; by permitting SunCal and/or Brian, Jennifer and Roselli to divest the Debtor of its Personal Property without compensation; by using the Debtor's cash precipitously in paying SMBC with the SMBC Transfer long before such debt actually became due.

50.    As a result of Nakanishi's conduct and breach of his fiduciary duties, the Debtor and its creditors have been damaged in an amount which has not yet been ascertained with certainty, but which the Trustee is informed and believes and thereupon alleges, exceeds $1Million.

## EIGHTH CLAIM FOR RELIEF

### [FOR FRAUD]

### (AGAINST BRIAN, JENNIFER, ROSELLI, SUNCAL and SOLARIS)

51.    Trustee realleges and incorporates herein by reference the allegations set forth

1  above in paragraphs 1 through 22, as though fully set forth herein.

2      52.    In conspiring to and committing the acts alleged herein, Brian, Jennifer, Roselli,

3  SunCal, Nakanishi and Solaris knew that the various transfers alleged herein were wrongful,

4  that they were not entitled to the monies transferred, and that the transfer would leave the

5  Debtor unable to meet its obligations to creditors and to otherwise continue in business, all to

6  the damage of the Debtor and its creditors.  Nevertheless, these defendants, and each of the,

7  engage in the conspiracy and committed the acts alleged herein for the purpose of improperly

8  enriching themselves without regard to rights and interests of the Debtor and its creditors.

9      53.    As a direct and proximate result of the fraudulent conspiracy alleged herein, the

10  estate and its creditors have been damages in a sum the exact amount of which has not yet been

11  ascertained, but which the Trustee is informed and believes exceeds $1 Million.

12      54.    The action of these defendants, and each of them, was willful, wanton, malicious

13  and oppressive and justify the award of exemplary and punitive damages.

14                    **NINTH CLAIM FOR RELIEF**

15              **[To Recover Avoided Transfers—11 U.S.C. 550]]**

16                    **(Against All Defendants)**

17      55.    Trustee realleges and incorporated herein by reference the allegations set forth in

18  paragraphs 1 through 49, as though fully set forth here.

19      56.     Trustee is informed and believes and thereupon alleges that each transferee was

20  the initial transferee of each transfer for whose benefit such transfer was made or the immediate

21  or mediate transferee of the initial transferee receiving such transfer.

22      57.    Trustee is informed and believes and thereupon alleges that to the extent the

23  transferee of each transfer identifies above is deemed to have been an immediate or mediate

24  transferee, that such transferee did not take such transfer for value and/or without knowledge of

25  the voidability of the transfer avoided.

26      58.    Pursuant to 11 U.S.C. § 550 (a) and (b), Trustee is entitled to recover the property

27  transferred herein or its value with interest thereon at the maximum legal rate from the date of

28  each transfer.

## **TENTH CLAIM FOR RELIEF**

### **[FOR TURNOVER OF PROPERTY OF THE ESTATE--§ 542]**

#### **(Against Brian, Jennifer and Roselli)**

59.     Trustee realleges and incorporates herein by reference the allegations set forth above in paragraphs 1 through 22, as though fully set forth herein.

60.     At all times material hereto, the Personal Property was property of the estate.

61.     This complaint shall constitute the Trustee's demand for turnover of the Personal Property to the estate.


## **PRAYER**

WHEREFORE, Trustee prays for judgment against Defendants, and each of them, as follows:

1.     On the First, Second, Third, Fourth, Fifth and Sixth Claims for Relief: For a judicial determination avoiding the SMBC Transfer, the Nakanishi Transfer, the New Century Transfers, and the Solaris Transfer, and each of them, and preserving the property transferred for the benefit of the Debtor's bankruptcy estate;

2.     On the Seventh Claim for Relief: For compensatory damages according to proof, but at least in the amount of $1 Million;

3.     On the Eight Claim for Relief: For compensatory damages according to proof, but at least in the amount of $1 Million;

4.     On the Eighth Claim for Relief: For punitive and exemplary damages in an amount according to proof;

5.     On the Ninth Claim for Relief: For turnover of the Personal Property as property of the estate;

/ / /

/ / /

/ / /

/ / /

1          <u>On All Claims for Relief</u>:

2      6.    For costs of suit incurred herein; and

3      7.    For such other and further relief as the Court deems just and proper.

4   DATED:  April 2, 2010                    LEVENE, NEALE, BENDER, RANKIN
5                                              & BRILL L.L.P.

6

7                                      By:_____<u>/s/ Irv M. Gross</u>_____
                                              IRV M. GROSS
8                                          Attorneys for Plaintiff
                                           David L. Ray, Chapter 7 Trustee
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

## ACTION BY WRITTEN CONSENT

## OF THE BOARD OF DIRECTORS OF

## FAITH COMMUNICATIONS, INC.

### January 9, 2008

The undersigned, being the sole director of Faith Communications, Inc., a Delaware corporation (the "*Company*"), hereby takes the following actions and adopts the following resolutions by unanimous written consent pursuant to Section 141(f) of the Delaware General Corporation Law and Section 3.13 of the Bylaws of the Company:

**Sale of the Company**

**WHEREAS,** the Board of the Company has determined that it is in the best interests of the Company to sell the Company by way of a sale of substantially all of the outstanding capital stock of the Company ("Sale Transaction") to SunCal Midwest, LLC, located at 360 N Michigan Ave., Chicago, IL 60601 ("Buyer") on terms and conditions set forth in the Letter of Intent ("LOI") between the Company and Buyer, substantially in the form attached hereto as Exhibit A.

**NOW, THEREFORE, IT IS RESOLVED,** that the Sale Transaction is hereby approved in all respect by the Board.

**RESOLVED FURTHER,** that the LOI, together with all agreements and other documents contemplated thereby, are hereby adopted and approved in all respect by the Board.

**RESOLVED FURTHER,** that officers of the Company, or any of them, are hereby authorized to execute and deliver, on behalf of the Company, the LOI and such other agreements and documents relating thereto and to cause the Company to perform its obligations under the LOI and such other agreements.

**Issuance of Common Stock**

**WHEREAS,** the Buyer in the Sale Transaction is requiring that Company obtain a release and discharge of its indebtedness to Masato Nakanishi ("MN") in the amount of $13,000,000 and to H and M Capital Partners Yugensekinin Jigyoukumiai ("H&M") in the amount of $5,000,000.

**WHEREAS,** the Company does not have the financial capacity to repay the above indebtedness in full or in part at the present time, and as such, has requested that each of

1



MN and H&M release and discharge the Company of the Company's indebtedness to them, in exchange for the issuance of the Company's common stock.

**NOW, THEREFORE, IT IS RESOLVED,** that the officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to issue Seven Million Two Hundred Seventy-Five Thousand (7,275,000) Shares of the Common Stock of the Company and One Million (1,000,000) Shares of the Series A Preferred Stock of the Company (collectively, the "MN Shares") to MN in exchange for MN's agreement to release and discharge the Company of the Company's existing indebtedness to MN.

**RESOLVED FURTHER,** that the officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to issue One Million Four Hundred Seventy-Five Thousand (1,475,000) Shares of the Common Stock of the Company (the "H&M Shares", and together with the MN Shares, the "Issued Shares") to H&M in exchange for H&M's agreement to release and discharge the Company of the Company's existing indebtedness to H&M.

**RESOLVED FURTHER,** that Board reasonably believes that the fair market value of the Common Stock issued to MN and H&M is $0.10 per share and that the fair market value of the Series A Preferred Stock issued to MN is $0.28 per share.

**RESOLVED FURTHER,** that the issuance and delivery of the shares of Common Stock issuable upon conversion of the Series A Preferred Stock issued to MN ("MN Preferred") is hereby authorized and approved in all respects.

**RESOLVED FURTHER,** the Issued Shares shall be duly and validly issued, fully paid and nonassessable, and the shares of Common Stock issuable upon conversion of MN Preferred, when issued upon conversion of the MN Preferred as provided for in the Amended and Restated Certificate of Incorporation of the Company, shall be duly and validly issued, fully paid and nonassessable..

**RESOLVED FURTHER,** that, upon receipt by the Company of the instrument evidencing the release and discharge of Company's indebtedness to MN and H&M, the officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to execute and deliver one or more certificates for the Issued Shares and any shares of Common Stock issued upon conversion of the MN Preferred, in such form as may be approved by such officers;

**RESOLVED FURTHER,** that the Issued Shares shall be offered, sold and issued in reliance on any applicable exemption from registration provided by the Securities Act of 1933, as amended, and any applicable exemption under applicable state blue sky laws, and that the officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to execute and file any forms, certificates, notices or other documents that are necessary or appropriate pursuant to federal or state securities laws.

**Omnibus**

2

**RESOLVED,** that the officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to take such further action and execute such additional documents as each may deem necessary or appropriate to carry out the purposes of the above resolutions.

**IN WITNESS WHEREOF,** the undersigned, being the sole member of the Board of Directors of the Company, have executed this written consent as of the 9th day of January, 2008.

_____
Masato Nakanishi

## ACTION BY WRITTEN CONSENT

## OF THE STOCKHOLDERS OF

## FAITH COMMUNICATIONS, INC.

### January 9, 2008

The undersigned, constituting at least fifty percent (50%) of the issued and

outstanding capital stock of Faith Communications, Inc., a Delaware corporation (the

"*Company*"), hereby takes the following actions and adopts the following resolutions by

unanimous written consent pursuant to Section 228 of the Delaware General Corporation

Law and Section 2.10 of the Bylaws of the Company:

### Sale of the Company

**WHEREAS,** the Board of the Company has recommended that it is in the best
interests of the Company to sell the Company by way of a sale of substantially all of the
outstanding capital stock of the Company ("Sale Transaction") to SunCal Midwest, LLC,
located at 360 N Michigan Ave., Chicago, IL 60601 on terms and conditions set forth in the
Letter of Intent between the Company and Buyer, substantially in the form attached hereto as
Exhibit A.

**NOW, THEREFORE, IT IS RESOLVED,** that the Sale Transaction is
hereby approved in all respect.

### Omnibus

**RESOLVED,** that the officers of the Company be, and each of them hereby is,
authorized and directed, for and on behalf of the Company, to take such further action and
execute such additional documents as each may deem necessary or appropriate to carry out
the purposes of the above resolutions.

**IN WITNESS WHEREOF**, the undersigned has executed this written
consent as of the 9th day of January, 2008.

Masato Nakanishi

1

## LOST STOCK AFFIDAVIT

Masato Nakamshi (the "Deponent") says:

(1)     As of January 8, 2008, the Deponent was the legal and beneficial owner of Three Million Seven-Hundred Fifty Thousand (3,750,000) shares of the Series A Preferred Stock of Faith Communications, Inc., a corporation organized and existing under the laws of Delaware (the "Company"), evidenced by Certificate Number PA-1 (the "Certificate").

(2)     The Deponent has no knowledge of, or reason to know of, the location of the Certificate, it being its good faith belief that the Certificate has been mislaid, lost, stolen or destroyed.

(3)     The Deponent has not, in whole or in part, (i) assigned, transferred, hypothecated, pledged or otherwise disposed of the above-mentioned stock or the rights of the Deponent in such stock or (ii) given any person or entity any transfer order, power of attorney or other authority of any nature whatsoever with respect to such stock.

(4)     This Affidavit is made for the purpose of inducing the Company, its legal representatives, successors and assigns (collectively "Obligees") to issue a replacement stock certificate evidencing the Three Million Seven Hundred Fifty Thousand (3,750,000) shares of capital stock of the Company issued to the Deponent. In consideration thereof, the Deponent hereby agrees that in the event the Certificate comes into the possession or under the control of the Deponent or of his or her heirs, legal representatives, successors or assigns, the Certificate shall be promptly delivered to the Obligees for cancellation. The Deponent, for itself and its legal representatives, successors and assigns, hereby indemnifies and saves harmless each of the Obligees from and against any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages, costs, charges, counsel fees and other expenses of every nature and character by reason of the loss, theft or destruction of the Certificate and/or the issuance, transfer or delivery of the above-mentioned securities without the surrender of the Certificate.

The undersigned Deponent declares under penalty of perjury that the foregoing is true and correct.

Dated as of January 8, 2008

Masato Nakanishi

Stock Power

For value received, the undersigned hereby sells, assigns and transfers unto
_____, Four Million Seven
Hundred Fifty Thousand (4,750,000) Shares of Series A Preferred Stock of Faith
Communications, Inc., represented by Stock Certificate Number PA __, and does hereby
irrevocably constitute and appoint _____ attorney to transfer
the said shares on the books of said corporation with full power of substitution in the
premises. Said sale, assignment and transfer is made without recourse and without
representation and warranty, except as set forth in the Letter of Intent, dated January ___,
2008, between SunCal Midwest, LLC and Faith Communications, Inc.

Dated:  January 10, 2008

_____
Masato Nakanishi

Receipt is acknowledged and accepted:

SunCal Midwest, LLC

Stock Power

For value received, the undersigned hereby sells, assigns and transfers unto
_____, Seven Million Three
Hundred Forty Five Thousand Six Hundred Forty (7,345,640) Shares of Common Stock
of Faith Communications, Inc., represented by Stock Certificate Number PA___, and does
hereby irrevocably constitute and appoint _____ attorney to
transfer the said shares on the books of said corporation with full power of substitution in
the premises. Said sale, assignment and transfer is made without recourse and without
representation and warranty, except as set forth in the Letter of Intent, dated January __,
2008, between SunCal Midwest, LLC and Faith Communications, Inc.

Dated: January 10, 2008

Masato Nakanishi

Receipt is acknowledged and accepted:


SunCal Midwest, LLC

Waiver and Release

Reference is made to the Restricted Stock Purchase Agreement, dated as of _____, 2005 ("Restricted Purchase Agreement"), between Faith Communications, Inc. and the undersigned.

The undersigned hereby waives and relinquishes any and all rights it has under the Restricted Purchase Agreement, including any right to and ownership of any vested portion of the Restricted Stock (as defined in the Restricted Purchase Agreement).

Masato Nakanishi

January 8, 2008

Board of Directors
Faith Communications Inc.
345 N. Maple Drive, Suite 123
Beverly Hills, CA 90210

Re: Resignation


To Whom It May Concern:

I hereby tender my resignation as President, Chief Executive Officer, and as Director
of Faith Communications Inc. d/b/a "Voce", effective as of the date of this letter.


Sincerely,

Masato Nakanishi

January 9, 2008

Masato Nakanishi
5-2-5-711, Minami-Azabu, Minato-ku,
Tokyo, Japan

Re: Loan Agreement

Dear Mr. Nakanishi,

Masato Nakanishi (the "Lender") and Faith Communications Inc. d/b/a "Voce" ("FC")
entered into a Loan Agreement ("Agreement"), dated March 9, 2007 for a total principal
amount of thirteen million dollars ($13,000,000).

FC is currently in the process of being sold to a third party ("New Buyer"), and as a
condition to closing, FC is required to obtain written confirmation that its indebtedness to
Lender be discharged by Lender. The scheduled closing for the sale of FC is January 10,
2008, and time is strictly of the essence, as any delay in the closing of the sale of FC to
the New Buyer will result in FC's bankruptcy.

There will be no net proceed from the sale of FC, and as such, FC is not in a position to
make additional repayment under the Agreement over what has been previously been
paid to you. In association with the closing of this transaction, we hereby request that
you agree to forever release and discharge the remaining obligations of FC under the
Agreement in exchange for the delivery of 7,275,000 shares of Common Stock of FC and
1,000,000 shares of Series A Preferred Stock of FC. FC reasonably believes that the
Common Stock of FC has a fair market value of $0.10 per share, and that the Series A
Preferred Stock of FC has a fair market value of $0.28 per share.

Please sign below to confirm your agreement to the foregoing and fax or scan it back to
me at 310 867 2100 or at bfarwell@voce.com.

We greatly appreciate your consideration in this matter.

Sincerely,                               Above accepted and acknowledged by:


_____                 _____
"FC"                                     "Lender"

By:   Bill Farwell                       By:   Masato Nakanishi
Its:  Chief Financial Officer

January 9, 2008

Hiroyuki Ohba
Chief Executive Officer
H AND M CAPITAL PARTNERS YUGENSEKININ JIGYOUKUMIAI
1  26  14 Okusawa Setagaya ku
Tokyo Japan

Re: Loans to Faith Communications Inc.


Dear Mr.Ohba,

H AND M CAPITAL PARTNERS YUGENSEKININ JIGYOUKUMIAI ("H&M") and
Faith Communications Inc. d/b/a "Voce" ("FC") entered into a Security Agreement
("Agreement"), dated October 26, 2007, with associated Notes ("Notes") on October 26,
2007, November 13, 2007, November 29, 2007 and December 18, 2008.

FC is currently in the process of being sold to a third party ("New Buyer"), and as a
condition to closing, FC is required to obtain written confirmation that its indebtedness to
H&M be discharged by H&M.  The scheduled closing for the sale of FC is January 10,
2008, and time is strictly of the essence, as any delay in the closing of the sale of FC to
the New Buyer will result in FC's bankruptcy.

There will be no net proceed from the sale of FC, and as such, FC is not in a position to
make any repayment under the Notes.  In association with the closing of the above
transaction, we hereby request that H&M agree to forever release and discharge the
obligations of FC under the Notes in exchange for the delivery of 1,475,000 shares of
Common Stock of FC.  FC reasonably believes that these shares have a current a fair
market value of $0.10 per share.

Please sign below to confirm your agreement to the foregoing and fax or scan it back to
me at 310 867 2100 or at bfarwell@voce.com.

We greatly appreciate your consideration in this matter.


Sincerely,                                    Above accepted and acknowledged by:



"FC"                                          "H&M"

By:    Bill Farwell                           By:    Hiroyuki Ohba
Its:    Chief Financial Officer               Its:    Chief Executive Officer

January 9, 2008

Mr. Brian Richards
SunCal MidWest, LLC
300 N. Michigan Avenue
Chicago, IL 60601

Re: Sale and Purchase of Faith Communications Inc.

Dear Mr. Richards,

I am sending you this Letter of Intent ("LOI") to set forth commitments between Faith
Communications Inc. d/b/a Voce ("Company") and SunCal MidWest LLC ("Buyer"), with
respect to the acquisition of Company by Buyer. Company operates a consumer wireless service
under the brand name "Voce", and Buyer intends to purchase Company in order to grow the
"Voce" business.

The following terms set forth the general outline of the transaction, such as capital structure and
ownership, allocation of current and future assets and liabilities, and other critical provisions.
Buyer and Company agree to enter into a more detailed agreement ("Agreement") containing
additional terms and conditions customary for this transaction, but it is understood that this LOI
will bind the parties to the terms and conditions stated herein and may be used as a basis for
closing the transaction even if a more definitive agreement is not executed for any reason.

1.  **Capital Ownership**: Upon closing of the transactions contemplated hereunder ("Closing"),
    Buyer will own 87% of the capital stock of the Company and H and M Capital Partners
    Yugensekinin Jigyoukumiai will own approximately 10% of the capital stock of the
    Company. Buyer acknowledges that approximately 3% of the capital stock have been
    granted to Company's employees, etc. pursuant to the Company's 2005 Omnibus Stock
    Incentive Plan (a list of which is attached hereto as Exhibit C) which shall remain
    outstanding through the Closing.

2.  **Officers and Directors**: At Closing, Masato Nakanishi will resign as President, Chief
    Executive Officer, and Director for the Company and Bill Farwell and Roy Kosuge will
    respectively resign as Treasurer and Secretary of the Company.

3.  **Use of Company Cash**: As of the date of this LOI, the Company reports a cash balance of
    $1,289,198. The parties understand and agree to use the proceeds of the current Company
    cash balance for the following estimated payables prior to Closing.



| Cash book balance as of 1/9/2008 | $1,289,198 |
|---|---|

Anticipated payments out of operating account prior to closing
under the purchase agreement on 1/10/2008:

| Mitsui-Sumitomo loan interest payment | $400,000 |
|---|---|
| Payment to Masato Nakanishi | $430,000 |
| Other estimated expenses | $59,198 |
| **Total Payments** | **$889,198** |

| Remaining cash balance prior to closing | $400,000 |
|---|---|

4. **Company Assets**: The estimated assets of the Company, as of January 9th, 2008, are listed in Exhibit A of this LOI. The parties contemplate that all assets are to remain in the Company through the Closing.

5. **Company Liabilities**: The estimated liabilities of the Company, as of January 9th, 2008, are listed in Exhibit B of this LOI. All liabilities will remain with the Company, with the exception of the following indebtedness (and also marked with * in Exhibit B) which shall be discharged by the Company prior to Closing:

    a. Outstanding loan to Sumitomo Mitsui Banking Corporation
    b. Outstanding loan to Faith Inc. subsidiary Faith West
    c. Outstanding loan to H&M Capital Partners LLC
    d. Outstanding loan to Masato Nakanishi

6. **Business Operations**: Company will make reasonable commercial effort to continue operating its business "as usual" during the negotiation of the Agreement, and will not make substantial changes to its business that may materially affect the ability for Buyer to operate the business after Closing. Buyer intends to continue operating the business as understood by the parties as of the signing of the LOI, and will not materially change the business, such as dismantling its entire operations or using the Company for purposes not contemplated in the Agreement. At Closing, Buyer agrees to inject appropriate amount of working capital into Company to enable Company to fund its continuing operations, and acknowledges that non-payment of critical vendors may result in material disruption of operations.



7. **Due Diligence; Terms of Sale**: Prior to Closing, Buyer must conduct any due diligence it believes necessary of the Company, and Company will make available information and personnel to fulfill requests by Buyer, provided that such requests do not interfere significantly with the operations of the business. At Closing, Company will cause its shareholders ("Transferring Shareholders") to deliver the shares set forth on Exhibit C to Buyer, endorsed in blank, and Buyer will execute a written receipt to confirm delivery of such shares and the closing of the transactions contemplated hereunder. The transfer of the shares to Buyer will be on an "as is" basis; There will be no representations, warranties or indemnities made by Company or the Transferring Shareholders to the Buyer, except that Transferring Shareholders will warrant that legal and valid title to the shares held by it will be transferred to Buyer at Closing. Buyer acknowledges that the change of control resulting from the transactions contemplated hereunder may trigger consent requirements under certain contracts and regulatory licenses of Company; Company and Transferring Shareholders agree to provide reasonable cooperation and assistance to Buyer and Company to enable Company to obtain such consents post Closing. After the Closing, each of Company and Buyer agrees to indemnify and hold harmless the Transferring Shareholders (and former directors and officers of Company) from any and all claims, liability, etc. related to or arising out of the business or operations of the Company.

The parties agree to close the transactions contemplated hereunder by no later than **January 10th, 2008**.

8. **Confidentiality**: By signing this LOI, each party agrees to keep in strict confidence any and all information exchanged between the parties with respect to the proposed acquisition of Company by Buyer, except to the extent each party must disclose certain information to its creditors to obtain necessary debt and equity financing, or to obtain necessary consent for consummating the Agreement (i.e., assignment provisions with key vendors). No party will make any public disclosure or issue any press releases pertaining to the existence of this LOI or the proposed acquisition between the parties without having first obtained the consent of the other parties, except for communications with employees, customers, suppliers, governmental agencies, and other groups as may be legally required or necessary or appropriate (i.e., any securities filings or notices), and which are not inconsistent with the prompt consummation of the transactions contemplated in this LOI.

9. Miscellaneous: This LOI, and the more definitive agreement, if the same is executed, constitutes the entire agreement of the parties hereto and may not be amended except by a written instrument signed by all of the parties hereto. This LOI shall be governed by the internal laws of the State of California. This LOI may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.



If the terms of this LOI are agreeable to you, please sign a copy of this LOI and return a signed copy to me at **310 867 2140** by no later than **noon, January 10th, 2008**, followed by a mailed original signed copy. Should you have any questions, please contact me at any time.

Very truly yours,


"Company"

By:    Bill Farwell
Its:    Chief Financial Officer


Above accepted and agreed to on ___9th___ of January, 2008 by:


"Buyer"

By:    Brian Richards
Its:    Managing Member


Above accepted and agreed to on ___10TH___ of January, 2008 by:


"Company"

By:    Masato Nakanishi
Its:    C.E.O.

**Addendum A**

**Dispersal of Funds**

Effective immediately upon signature, all monitory instruments existing or further funds received
into the Company will be controlled 100% by Buyer. The Company will not disperse any funds,
enter into any loans, or engage in any contracts.

Above accepted and agreed to on ___ 9TH of January, 2008 by:

"Buyer"

By:   BRIAN Richards
Its:   Managing Member


Above accepted and agreed to on 10TH of January, 2008 by:

"Company"

By:   MASATO NAKANISHI
Its:   C.E.O.


"Company"

By:
Its:

Exhibit A

## Estimated Company Assets

| Asset Description | Amount | Notes |
|---|---|---|
| Remaining cash | $400,000 | from cash activity worksheet |
| Customer receivables | $130,000 | in-house collections |
| Customer receivables | $50,000 | sent to collection agency |
| Receivable - Skyway | $50,000 | sub-MVNO implementation fee |
| Handsets | $300,000 | liquidation value |
| Furniture | $50,000 | estimated market value |
| Computers | $50,000 | estimated market value |
| Telecom switches and phone equipment | $100,000 | estimated market value |
| Paymentech reserve | $56,000 | merchant bank reserve balance |
| LC - Verizon | $375,000 | letter of credit |
| LC - Cingular | $250,000 | letter of credit |
| LC - Calluphone | $100,000 | letter of credit |
| LC - 345 Maple Drive office lease | $143,000 | letter of credit |
| LC - Glendale call center lease | $64,000 | letter of credit |
| LC - Westfield Century City retail lease | $37,500 | letter of credit |
| LC - New York office lease | $37,000 | letter of credit |
| LC - Camden retail lease | $54,000 | letter of credit |

$2,246,500

**Exhibit B**
**Estimated Company Liabilities**

| Description | Amount | Notes |
|---|---|---|
| Mitsui Sumitomo Bank | $11,000,000 | Line of credit guaranteed by Faith Inc * |
| Faith West | $1,500,000 | Faith Inc. subsidiary * |
| Masato Nakanishi | $12,272,500 | Loan * |
| H&M Capital | $4,852,500 | Loan * |
| **Salaries & benefits** | | |
| Estimated monthly salaries | $240,000 | |
| Estimated monthly benefits | $60,000 | |
| **Monthly Lease Expenses** | | |
| 345 N Maple, Suite 123 | $29,010 | 8479 sq. ft., expires 7/5/09 |
| 345 N Maple, Suite 208 | $4,568 | 1142 sq. ft., expires 7/5/09 |
| One Rockefeller Plaza | $9,513 | 2730 sq. ft. expires 8/30/09 |
| 368 N Camden Drive | $14,482 | 805 sq ft., expires 2/28/11 |
| Westfield Century City Mall | $14,995 | 423 sq ft., expires 6/30/12 |
| Westfield Topanga Mall | $10,078 | 150 sq. ft., expires 1/31/11 |
| 425 E Colorado, Glendale | $11,894 | 5145 sq. ft., expires 8/25/10 |
| **Content Agreements** | | |
| Alacre | $62,500 | Stipulated judgement of $6,250/mo x 10 months |
| Zagat | $115,500 | Annual fee - 2 years remaining ($55K due now) |
| STATS | $67,500 | Balance of settlement - $7.5K/mo x 9 months |
| Cinemasource | $60,000 | Approx. balance of deal |
| Worldmate | $50,000 | Approx. balance of deal |
| **Accounts Payable** | $1,258,173 | |
| **Accruals** | | |
| PCM | $225,000 | Fees for December 2007 services |
| AT&T | $50,000 | Fees for December 2007 services |
| Employee PTO | $225,000 | |
| Severance accrual | $100,000 | Severance for employees terminated prior to closing |
| Telecom Taxes | $120,000 | Pass through from customer to tax authority |
| Other | $100,000 | Estimated 2007 other unrecorded vendor invoices |
| **Contingent Liabilities** | | |
| Employee #1 lawsuit | TBD | Estimated settlement is $150K - $300K which should be paid by EPLI insurance. Insurance also pays up to $260 per hour for attorney fees. Our attorney's rate is $450. |
| Employee #2 lawsuit | TBD | Filed complaint with EDD in April 2007   Has until end of April 2008 to file lawsuit prior to statute of limitations expiring. |

\* Debt shall be discharged by Company prior to Closing.



**Exhibit C**
**Capital Stock Transferred**

| Shareholder | Type of Stock | Shares to be Transferred |
|---|---|---|
| Masato Nakanishi | Preferred Shares | 4,750,000 |
| Masato Nakanishi | Common Shares | 7,345,640 |
| | | 12,095,640 |



### Schedule 1
### Shares Held under Company's 2005 Omnibus Stock Incentive Plan

| Employees | Title | Hire Date | Type of Stock | Stock Issuance Date | Total Shares Outstanding | |
|---|---|---|---|---|---|---|
| Steve Stanford | CFO | 01/14/05 | Common | 8/5/2005 | 100,000 | |
| Brad Feldman | VP | 02/14/05 | Restricted | 9/23/2005 | 22,135 | a |
| Bill Farwell | CFO | 03/08/05 | Restricted | 9/23/2005 | 18,408 | a |
| Bill Farwell | CFO | 03/08/05 | Non Quals | 9/30/2006 | 37,500 | |
| Kd Hagen | VP | 03/07/05 | Restricted | 9/23/2005 | 62,500 | a |
| Greg Farrell | VP | 04/25/05 | Restricted | 9/23/2005 | 27,344 | b |
| Craig Bowers | VP | 02/14/05 | Restricted | 9/23/2005 | 14,167 | a |
| Ryuhei Kosuge | COO | 05/09/05 | Restricted | 9/23/2005 | 13,452 | b |
| Ryuhei Kosuge | COO | 05/09/05 | Non Quals | 9/30/2006 | 60,000 | |
| Trevor Kale | Supervisor | 07/12/05 | Non Quals | 9/23/2005 | 2,000 | c |
| Stephanie Deakins | Associate | 07/25/05 | Non Quals | 9/23/2005 | 1,500 | c |
| Natasha Power | Manager | 08/09/05 | Non Quals | 9/23/2005 | 1,500 | c |
| Natasha Power | Manager | 08/09/05 | Non Quals | 9/30/2006 | 1,000 | |
| Amanda Coffin | Admin | 03/10/05 | Non Quals | 9/23/2005 | 1,500 | a |
| Maaya Ota | Admin | 09/08/05 | Non Quals | 7/1/2006 | 250 | d |
| Dinah Obeso | Staff | 09/13/05 | Non Quals | 7/1/2006 | 250 | d |
| Daphne Milfort | Staff | 09/20/05 | Non Quals | 7/1/2006 | 250 | d |
| Richard Wesley | Manager | 09/20/05 | Non Quals | 7/1/2006 | 1,000 | d |
| David Engerman | VP | 11/07/05 | Non Quals | 7/1/2006 | 2,500 | e |
| David Engerman | VP | 11/07/05 | Non Quals | 9/30/2006 | 2,500 | |
| Nanneh Hacopians | Supervisor | 11/29/05 | Non Quals | 7/1/2006 | 500 | e |
| Greg Drews | Sr Mgr | 12/16/05 | Non Quals | 7/1/2006 | 1,500 | e |
| Darren Edwards | Staff | 04/10/06 | Non Quals | 9/30/2006 | 250 | |
| Nora Wade | Staff | 04/10/06 | Non Quals | 9/30/2006 | 250 | |
| Travis Willits | Staff | 04/10/06 | Non Quals | 9/30/2006 | 250 | |
| Erik Yee | Staff | 04/10/06 | Non Quals | 9/30/2006 | 250 | |
| Christopher Stephens | Associate | 05/10/06 | Non Quals | 9/30/2006 | 500 | |
| Chase Pletts | Staff | 05/17/06 | Non Quals | 9/30/2006 | 250 | |
| Tiffany Lopez | Staff | 06/19/06 | Non Quals | 9/30/2006 | 250 | |
| Erin Stewart | Staff | 07/05/06 | Non Quals | 3/31/2007 | 250 | |
| Ron Pattani | CMO | 07/12/06 | Non Quals | 3/31/2007 | 20,000 | |
| Jennifer Bissell | Staff | 08/07/06 | Non Quals | 3/31/2007 | 250 | |
| Benjamin Hudson | Staff | 08/07/06 | Non Quals | 3/31/2007 | 250 | |
| Wendy Nguyen | Staff | 08/07/06 | Non Quals | 3/31/2007 | 250 | |
| Matthew Splitsloser | Staff | 08/07/06 | Non Quals | 3/31/2007 | 250 | |
| Robert Ganung | Manager | 08/14/06 | Non Quals | 3/31/2007 | 1,000 | |
| Greg Horos | Staff | 08/21/06 | Non Quals | 3/31/2007 | 250 | |
| Andrew Shin | Manager | 10/10/06 | Non Quals | 3/31/2007 | 500 | |
| Brad Biner | Staff | 10/11/06 | Non Quals | 3/31/2007 | 250 | |
| Terrell Clayton | Staff | 10/11/06 | Non Quals | 3/31/2007 | 250 | |
| Sharonda Moore | Staff | 10/27/06 | Non Quals | 3/31/2007 | 250 | |
| Emily Ion | Staff | 10/30/06 | Non Quals | 3/31/2007 | 250 | |
| James Bonte | Manager | 11/06/06 | Non Quals | 3/31/2007 | 1,000 | |
| Shannon Quinn | Staff | 11/13/06 | Non Quals | 3/31/2007 | 250 | |
| Renee San Pedro | Staff | 11/13/06 | Non Quals | 3/31/2007 | 250 | |
| Bradford Webster | Staff | 11/24/06 | Non Quals | 3/31/2007 | 250 | |
| Jum Mock | Staff | 12/07/06 | Non Quals | 3/31/2007 | 250 | |
| Carolynne Schloeder | Board | | Res Stock | 9/23/2005 | 50,000 | g |
| **Total Shares** | | | | | **449,756** | |

Footnotes
a  vesting start date 3/15/05
b  vesting start date 5/15/05
c  vesting start date 7/15/05
d  vesting start date 9/30/05
e  vesting start date 12/31/05
f  vesting start date 3/31/06
g  vesting start date 1/15/05

